FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 29, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EVELYN W., | No. 2:22-CV-00047-RHW |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | ECF No. 21, 22 |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 21, 22.  Attorney J. Leanne Martinez represents Evelyn W. (Plaintiff); Special Assistant United States Attorney Lars J. Nelson represents the Commissioner of Social Security (Defendant).  This matter was referred to the undersigned magistrate judge for issuance of a report and recommendation.  ECF No. 26.  After reviewing the administrative record and the briefs filed by the parties, the Court **RECOMMENDS** Plaintiff's Motion, ECF No. 21, be granted and Defendant's Motion, ECF No. 22, be denied.

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on June 15, 2011, alleging onset of disability beginning March 21, 2011.  Tr. 142, 347-58, 1500.  The applications were denied initially and upon reconsideration, and an Administrative Law Judge (ALJ) held a

1   hearing in August 2012 and issued an unfavorable decision on November 19, 2012.
2   Tr. 81-117, 180-201, 215-18.  The Appeals Council granted Plaintiff's request for
3   review, and on November 7, 2014 the Appeals Council vacated the hearing
4   decision and remanded the case to an ALJ for further proceedings.  Tr. 202-05.
5   Another hearing was held on January 26, 2016 and the ALJ issued another
6   unfavorable decision on August 18, 2016.  Tr. 1667-92.  The Appeals Council
7   declined Plaintiff's request for review, and Plaintiff filed an action in United States
8   District Court for the Western District of Washington.  Tr. 1693-1701.  On
9   September 29, 2017, the Court reversed and remanded the claim for further
10  proceedings.  Tr. 1706-24.  On January 11, 2018, the Appeals Council vacated the
11  ALJ's 2016 decision and remanded the case to an ALJ for further proceedings; the
12  new ALJ was ordered to consolidate the case with the file for a subsequent claim
13  for Title XVI benefits, filed while the appeal was pending, and to issue a new
14  decision on the consolidated claims.  Tr. 1728-32.

15      ALJ Glenn G. Meyers held a hearing on January 24, 2019 and issued an
16  unfavorable decision on February 21, 2019.  Tr. 1733-60.  The Appeals Council
17  assumed jurisdiction of the claim and remanded the case back to ALJ Meyers in
18  April 2020.  Tr. 1761-66.  The Appeals Council instructed the ALJ to comply with
19  the Western District of Washington's 2017 remand order, explaining that the
20  reasoning in the ALJ's decision did not reflect compliance with the district court
21  order because he used the same rationale as in an earlier decision concerning
22  medical opinion evidence; and that the ALJ addressed only some of the issues that
23  were the subject of the court order.  Tr. 1763-65.  Pursuant to the Appeals
24  Council's 2020 remand order, on March 30, 2021 the ALJ held a hearing, and a
25  supplemental hearing was also held, at Plaintiff's request, on October 26, 2121
26  after new evidence was received.  Tr. 1591-1633, 1634-66; *see* Tr. 2014, 2186-90.

27      On November 24, 2021, ALJ Meyers issued a partially favorable decision on
28  Plaintiff's claim, finding she was not disabled at any time prior to her date last

REPORT AND RECOMMENDATION . . . - 2

1    insured, but that she was disabled beginning October 29, 2021.  Tr. 1497-1535.

2    The Appeals Council did not assume jurisdiction of the case, and the ALJ's

3    November 24, 2021 decision became the final decision of the Commissioner,

4    which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff

5    filed this action for judicial review on March 16, 2022.  ECF No. 1.

## STANDARD OF REVIEW

7        The ALJ is tasked with "determining credibility, resolving conflicts in

8    medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035,

9    1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with

10   deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*,

11   201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed

12   only if it is not supported by substantial evidence or if it is based on legal error.

13   *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is

14   defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at

15   1098.  Put another way, substantial evidence "is such relevant evidence as a

16   reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

17   *Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305

18   U.S. 197, 229 (1938).  If the evidence is susceptible to more than one rational

19   interpretation, the Court may not substitute its judgment for that of the ALJ.

20   *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595,

21   599 (9th Cir. 1999).  If substantial evidence supports the administrative findings, or

22   if conflicting evidence supports a finding of either disability or non-disability, the

23   ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230

24   (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be

25   set aside if the proper legal standards were not applied in weighing the evidence

26   and making the decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d

27   432, 433 (9th Cir. 1988).

28

REPORT AND RECOMMENDATION . . . - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. § 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four the claimant bears the burden of establishing a prima facie case of disability.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled.  20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On November 24, 2021, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from her alleged onset date of March 21, 2011 until October 29, 2021, Tr. 1497-1535, but that beginning on October 29, 2021, disability was established due to a change in age category.  Tr. 1518-19.

At step one, the ALJ found Plaintiff, who meets the insured status requirements of the Social Security Act through March 31, 2015, had not engaged in substantial gainful activity since her alleged onset date, March 21, 2011.  Tr. 1503.

At step two, the ALJ determined Plaintiff had the following severe impairments: fibromyalgia, asthma, a depressive disorder, an anxiety disorder, and post-traumatic stress disorder (PTSD).  *Id*.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 1504.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC), and found she could perform light work with the following limitations:

> [Plaintiff] can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, and sit about six hours in an 8-hour workday.  *Except*: [Plaintiff is] able to remember, understand, and carry out simple and routine instructions and tasks consistent with the learning and training requirements of SVP level one and two jobs; provided a sit/stand at will option at work [sic]; no overhead reaching; frequent reaching at or below shoulder level; frequent handling and fingering; no contact with the public; capable of working in proximity to but not in coordination with coworkers; occasional contact with supervisors; occasional stooping; no crouching, crawling, kneeling, or climbing ramps, stairs, ropes, ladders, scaffolds; avoid concentrated exposure to pulmonary irritants such as dust, smoke, fumes, and odors; no loud noise in the workplace, no work in proximity to hazardous conditions or at heights, or ambulating across uneven surfaces.

Tr. 1506.

At step four, the ALJ found Plaintiff was unable to perform past relevant work.  Tr. 1517.

At step five, the ALJ found that prior to October 29, 2021, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the job of office helper; outside deliverer; and mailroom clerk.  Tr. 1518.

The ALJ found that Plaintiff was disabled beginning October 29, 2021, a date that corresponded with Plaintiff turning 55 with a non-mechanical application

of the age requirement; [1] and that beginning on that date, considering Plaintiff's age, education, work experience, and RFC, a finding of disabled was reached by direct application of Medical-Vocational Rule 202.06.  Tr. 1519.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from her alleged onset date in 2011 through her date last insured on March 31, 2015, but that she became disabled on October 29, 2021 and continued to be disabled through the date of the decision.  Tr. 1519-20.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and Title XVI of the Social Security Act.[2]  The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff raises the following issues for review (1) whether the ALJ violated the law of the case doctrine and failed to properly evaluate the medical opinion evidence; and (2) whether the ALJ properly evaluated Plaintiff's symptom complaints.  ECF No. 21 at 2.

---

[1] When a person is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the person] is disabled, [the ALJ] will consider whether to use the older age category . . . after evaluating the overall impact of all the factors of the case."  *See* 20 C.F.R. §§ 404.1563(b), 416.963(b); HALLEX I-2-2-42.

[2] Plaintiff does not challenge the decision that she was disabled on October 29, 2021 and later, only the finding she was not disabled from her alleged onset date of March 21, 2011 through October 28, 2021.  ECF No. 21 at 2.

# DISCUSSION

## A.    Law of the Case/Medical Opinions

Plaintiff contends the ALJ violated the law of the case doctrine by using the same reasoning already rejected by the district court to discount the medical opinions of James Czysz, Psy.D.; Owen J. Bargreen, Psy.D.; Melanie E. Mitchell, Psy.D.; Molly Fuentes, M.D.; and Gordon Hale, M.D.; and that the ALJ's failed to provide legally sufficient reasons for rejecting these and other medical opinions. ECF No. 21 at 5-22.

For claims filed prior to March 27, 2017, there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).  If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041. An ALJ may reject the opinion of a nonexamining physician by reference to

specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted).

The law of the case doctrine applies in the Social Security context. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). Under the law of the case doctrine, a court is precluded from revisiting issues which have been decided—either explicitly or implicitly—in a previous decision of the same court or a higher court. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). The doctrine of the law of the case "is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567 (citing *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991)). The rule of mandate is similar to, but broader than, the law of the case doctrine. The rule provides that any "district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." *Stacy*, 825 F.3d at 567-68. Further, in Social Security cases, when the Appeals Council remands a case to the ALJ, the ALJ must take any action ordered by the Appeals Council and must follow the specific instructions of the reviewing court. 20 C.F.R. § 416.1477; *Samples v. Colvin,* 103 F. Supp. 3d 1227, 1231-32 (D. Or. 2015).

Plaintiff contends the ALJ erred by provided the same reasoning for rejecting several medical opinions that was previously found improper by the district court and failed to provide specific and legitimate reasons for rejecting the opinions. ECF No. 21 at 2. Defendant contends the ALJ reasonably reevaluated the medical opinions and did not simply repeat prior findings, as he offered more explanation; and that a substantially expanded record created an exception to the law of the case and the rule of mandate. ECF No. 22 at 8-14.

The Court finds the ALJ erred by using same rationale used by the prior ALJ in the 2016, which was found legally insufficient by the District Court of the

REPORT AND RECOMMENDATION . . . - 8

Western District of Washington in 2017; and the ALJ erred in failing to re-evaluate the medical opinion evidence as instructed by the 2017 remand order and the 2018 and 2020 orders of the Appeals Council.  Contrary to the instructions of the district court and the Appeals Council, the new ALJ twice used the same rationale used by the prior ALJ in the 2016 decision.  First, the ALJ adopted the prior ALJ's findings in a February 2019 decision, although he explained this was "notwithstanding the [2017] criticism . . . by the U.S. District Court"; his 2019 decision was promptly vacated and returned to the ALJ by the Appeals Council in 2020 for "failure to reflect compliance with the district court order."  Tr. 1763-64; *see* Tr. 1741.  Upon remand, however, the ALJ again used the same rationale in the 2021 decision; some text is rearranged and there are a few lines of explanation added, but as discussed *infra* this is the same rationale that the district court found legally insufficient in 2017.  *See* Tr. 1512, 1515-16, 1711-22.  Defendant contends that "here there was a substantially expanded record," creating an exception to the law of the case and rule of mandate.  ECF No. 22 at 12.  The Court finds the new evidence is not substantially different, however, the ALJ provided minimal discussion of the new evidence and, as discussed *infra*, it is not clear the ALJ carefully reviewed the updated record.  *See* Tr. 1505-1517.  Further, it must be noted that much of the delay resulting in the expanded record is the direct result of the ALJ's failure to comply with the 2017 district court's order, as discussed in the procedural history *supra*.  *See also, e.g.*, Tr. 1761-66.  To the extent the same reasoning used by the ALJ was previously rejected by the district court, the ALJ was bound by the previous decision; and on this record the Court finds the ALJ violated the law of the case.

     *1.  Dr. Czysz*

     On December 2, 2015, Dr. Czysz performed a psychological/psychiatric evaluation on behalf of Washington State DSHS and rendered an opinion on Plaintiff's level of functioning.  Tr. 1254-58.  Dr. Czysz diagnosed Plaintiff with

major depressive disorder, recurrent and severe, and PTSD.  Tr. 1256.  He opined Plaintiff had marked limitation in her ability to adapt to changes in a work setting, communicate and perform effectively in a work setting, complete a normal workday and work week without interruptions form psychologically based symptoms, and to set realistic goals and plan independently, that she had moderate limitations in other basic work activities, and an overall marked severity rating. Tr. 1256-57.  The ALJ gave Dr. Czysz's opinion little weight.  Tr. 1515.

The ALJ gave Dr. Czysz's little weight because he only "reviewed a single psychological report . . .  and he was unaware of the longitudinal picture of the [Plaintiff's] psychological impairments," and because Dr. Czysz relied on Plaintiff's subjective reports and presentation at the evaluation that day, which were inconsistent with her activities, including travelling to eastern Washington four times a year to visit family and attempts to change to another pain clinic, which showed "resourcefulness and the ability to change" and that she "can adapt changes and can sustain activities."  Tr. 1515-16.

As Plaintiff points out, this reasoning was already found insufficient by the district court in 2017; it held that rejecting Dr. Czysz's opinion because he only reviewed one evaluation and not the longitudinal record was not a specific and legitimate reason to give less weight to his opinion.  ECF No. 21 at 5 (citing Tr. 1719-20).  Defendant points out that the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.  ECF No. 22 at 9; *see* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).  Further, an ALJ may reject a medical opinion if it is conclusory, inadequately supported, or not supported by the record. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Here, however, the ALJ again simply concluded, without explanation or analysis here or elsewhere in the

decision, that Dr. Czysz's and other psychologists with opinions supporting Plaintiff's claims were "unaware of the longitudinal picture of the claimant's psychological impairments." S*ee, e.g.*, Tr. 1515-17.  Without the ALJ offering more than his stated conclusions, the Court is unable to meaningfully review whether the ALJ's interpretation of the evidence is reasonable.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the Court to meaningfully review the ALJ's finding).

In 2017 the district court explained that the ALJ failed to explain why Dr. Czysz's failure to review other records discredited his opinion and noted Dr. Czysz did, in fact, review another psychological report, interviewed and observed Plaintiff, and administered a mental status exam.  Tr. 1719.  The court also held that the ALJ failed to explain how Plaintiff's requests to change to a different pain clinic were inconsistent with Dr. Czysz's opinion that Plaintiff was markedly limited in her ability to adapt to changes in a routine work setting, and that "indeed, the record does not support a finding that Plaintiff's attempts to find a new pain clinic that would prescribe narcotics indicate resourcefulness and the ability to change." Tr. 1720.  The court found in 2017 that records showed Plaintiff "was merely trying to move all her treatment to one medical facility, which is not inconsistent with Dr. Czysz's findings regarding Plaintiff's ability to adapt to changes in a routine work setting," and that this was also not a specific and legitimate reason supported by substantial evidence to reject Dr. Czysz's opinion, yet the ALJ repeated the same reasoning in the 2021 decision.  Tr. 1721.

The 2021 ALJ also relied on Plaintiff's activities to discount Dr. Czysz's opinion, including her ability to travel four times yearly to eastern Washington to visit family.  Tr. 1515.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  In 2017 the district court

explained, however, that records showed when she travelled to see family her symptoms worsened and she could only visit for a limited amount of time; and the court found that Plaintiff's ability to travel was not inconsistent with Dr. Czysz's opinion, did not show Plaintiff could adapt to changes and sustain activities, and was also not a specific and legitimate reason supported by substantial evidence to discount Dr. Czysz's opinion.  Tr. 1721.  Defendant contends that any error in using the same reasoning is harmless, as elsewhere in the decision the 2021 ALJ discussed other activities, but the ALJ failed to explain here or elsewhere how any of the activities discussed such as yoga, volunteering, texting or visiting a few friends, or traveling to see family a few times a year are inconsistent with Dr. Czysz and the other psychological opinions, which consistently found her limited in her ability to perform basic work activities.  ECF No. 22 at 9-10; *see* Tr. 1505, 1507-11.  The 2021 ALJ also noted Plaintiff's reports that she had been staying on her son's couch for four years in 2015, her typical day involved managing her pain, that while she had attempted online classes she was unable to complete them, and that she testified that she was no longer able to go for walks, had difficulty handling stress, and was no longer able to do yoga.  Tr. 1507, 1510-11.  The ALJ did not explain how any of these activities were transferable to a work setting or were consistent with full time work activity.  On this record, Plaintiff's activities were not a specific and legitimate reason supported by substantial evidence to give Dr. Czysz's opinion little weight.

The ALJ also found that Dr. Czysz and other psychologists relied on their own "observations and findings at the evaluation," which "means [their] observations and findings were of the claimant's subjective reports and presentation at these evaluations."  Tr. 1515-17.  As the district court already explained in 2017, however, the Ninth Circuit in *Ghanim* contemplated that medical sources rely on self-reports to varying degrees and held that an ALJ may reject a medical source's opinion as based on unreliable self-reports only when the

medical source relied "more heavily on a patient's self-reports than on clinical
observations." *Ghanim v. Colvin,* 763 F.3d 1154, 1162 (9th Cir. 2014).
Additionally, a clinical interview and mental status evaluation are "objective
measures" which "cannot be discounted as self-report." Tr. 1717-18 (quoting *Buck
v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Here, Dr. Czysz (and the other examining psychologists) performed full
psychological evaluations, including history and mental status exam and
psychological testing, and made objective findings based on their clinical
observations and testing. Tr. 1254, 1257-58. For example, on mental status exam
Dr. Czysz observed that Plaintiff presented with depressed mood and that her
affect was anxious with "many features of PTSD." Tr. 1257-58. He also observed
abnormal thought process and content, which he explained was "notable for
perseveration and intrusive memories of past trauma"; and he observed she had
abnormal concentration, insight, and judgment, with "an impaired ability to engage
in executive functioning skills such as planning and organizing behavior in a task-
oriented manner." Tr. 1258. The ALJ's conclusion that Dr. Czysz's opinion was
based more heavily on Plaintiff's self-reports than his own observations and
findings upon mental status exam was also not a specific and legitimate reason
supported by substantial evidence to discount the medical opinion.

The ALJ violated the law of the case by using the same reasoning already
found insufficient by the district court and failed to provide specific and legitimate
reasons supported by substantial evince to discount Dr. Czysz's opinion.

### 2. Dr. Bargreen and Dr. Mitchell

On May 18, 2011, Dr. Bargreen performed a psychological/psychiatric
evaluation on behalf of Washington State DSHS and rendered an opinion on
Plaintiff's level of functioning. Tr. 724-28. Dr. Bargreen diagnosed Plaintiff with
major depressive disorder, recurrent, PTSD, panic disorder with agoraphobia, and
cannabis dependence with physiological dependence. Tr. 726. He opined she had

moderate limitation in her ability to understand, remember, and persist in tasks following simple instructions; and marked limitation in her ability to understand, remember, and persist in tasks following complex instructions, to learn new tasks, perform routine tasks without undue supervision, be aware of normal hazards and take appropriate precautions, to communicate and perform effectively in a work setting with public contact and limited public contact, and in her ability to maintain appropriate behavior in a work setting. Tr. 727. He opined Plaintiff "has some grave mental health problems that would prevent her from working at the moment" including "marked depression and marked anxiety issues including weekly panic attacks . . . multiple suicide attempts in her lifetime"; and that she has "some short-term memory problems." Tr. 728. He noted her history of abuse and traumatic experiences in her lifetime and opined she "cannot work at the moment and is a good candidate for SSI." *Id*. He indicated she should be reevaluated in 12 months and that vocational training or services would not minimize or eliminate barriers to employment, and her recommended a protective payee due to inability to manage funds appropriately. *Id*.

In 2012, 2014, and 2017 Dr. Mitchell performed psychological/psychiatric evaluations on behalf of Washington State DSHS and rendered an opinion on Plaintiff's level of functioning. Tr. 788-97, 928-38, 2799-2810. In 2012 Dr. Mitchell diagnosed her with PTSD, chronic and severe, and major depressive disorder, chronic and severe. Tr. 789. She opined Plaintiff could follow simple and complex instructions, but would have difficulty following instructions consistently, and that fatigue from depression and chronic anxiety would likely affect Plaintiff's ability to concentrate as well as learn new tasks; and she reported Plaintiff was "not able to keep her focus (anxiety/depression) during the evaluation and would likely need additional supervision to keep on track." Tr. 790. She opined Plaintiff would be unable to have contact with the public, maintain a schedule, and sustain a productive pace. *Id*. She opined symptoms would interfere with Plaintiff's ability

to interact appropriately with others, communicate effectively and adapt to routine changes and that "she would likely not be able to attain or sustain employment at this time." *Id*.

In 2014, Dr. Mitchell diagnosed Plaintiff with major depressive disorder, chronic and severe with psychotic features; generalized anxiety disorder; and PTSD. Tr. 929. Dr. Mitchell opined Plaintiff had severe limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and in her ability to maintain appropriate behavior in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, and in her ability to set goals and plan independently; and marked and moderate limitations in other basic work activities. Tr. 930. She opined Plaintiff would be so limited for 24 months with available treatment, and that "SSI referral [was] appropriate due to chronic, severe mental health impairments (requiring hospitalization when deterioration occurs), poor prognosis for return to gainful employment and likely need for long-term case management and resources." Tr. 931.

In October 2017, Dr. Mitchell performed another evaluation on behalf of DSHS; she indicated she reviewed her own 2014 evaluation, along with Dr. Czysz's 2015 evaluation. Tr. 2799-2809. Dr. Mitchell diagnosed Plaintiff with PTSD, chronic and severe; generalized anxiety disorder; major depressive disorder, recurrent, unspecified; and unspecified personality disorder (borderline and histrionic traits). Tr. 2801. Much of the report is illegible in the administrative record, however, and it is not clear if Dr. Mitchell found any severe limitations, although several marked and moderate limitations appear checked. *Id*. It is difficult to read her mental status exam findings, although abnormal findings in memory and concentration and thought process are noted. Tr. 2803.

The ALJ gave the opinions of Dr. Bargreen and Dr. Mitchell little weight because they were inconsistent with their mental status findings, they did not

indicate that the longitudinal record was reviewed and "were unaware of the longitudinal picture of [Plaintiff's] psychological impairments," and their "observations and findings were of [Plaintiff's] subjective reports and presentation at those evaluations." Tr. 1515-16.  The 2021 ALJ's rationale for these providers appears cut and pasted from the prior decision, with a few lines and a paragraph break added.  *Compare* Tr. 22 *and* Tr. 1516.  In the 2017 remand order, the district court already found that the ALJ failed to explain how the mental status findings cited by the ALJ were inconsistent with the psychologists' opinions and that the ALJ failed to discuss relevant abnormal findings in the exams.  Tr. 1717.  Further, the district court held that the examining psychologists' mental status exams "provided a sound basis for their opinions regarding Plaintiff's limitations." *Id*. The court explained each doctor observed Plaintiff, conducted a formal clinical interview and mental status exam, determined there was no evidence of malingering, and supported their opinions with objective testing and observations; and the court held their opinions "were not more heavily based on Plaintiff's subjective complaints and self-reports." Tr. 1718.  While the ALJ added a few lines of explanation in 2021, Tr. 1516, it is essentially the same language the ALJ added to the discussion of Dr. Czysz and is legally insufficient for the same reasons discussed *supra*.  *Compare* Tr. 1515 *with* 1516.

Additionally, Dr. Mitchell had the opportunity to evaluate Plaintiff three times and explained in 2017 that she reviewed two other prior psychological reports, including her own 2014 report.  It must be noted that while her 2017 report was not at issue in the 2017 remand order, it is for the most part illegible in the administrative record, *see* Tr. 2799-2809, yet the ALJ found Dr. Mitchell made the same findings as she did in 2014, explaining that "in the March 2014 form and the October 2017 form, Dr. Mitchell again opined that [Plaintiff] has multiple marked vocational limitations." Tr. 1516.  First, this is factually incorrect, as Dr. Mitchell found the limitations the ALJ noted as "marked" were *severe* in 2014, which is a

higher category of limitation on the DSHS form; a severe limitation is defined on the form as "inability to perform the particular ability in regular competitive employment or outside of a sheltered workshop." *See* Tr. 930.  Further, Dr. Mitchell's findings in 2017 are not legible in the administrative record the ALJ cited; this, along with the direct copying of the rationale from prior decision, raises questions as to the care taken in reviewing Plaintiff's record.  Tr. 1516; *see* Tr. 930, 2801.  The Court finds the ALJ also did not properly assess Dr. Mitchell's 2017 opinion.  Tr. 1516.

The ALJ's reasoning in the 2021 decision repeats the 2016 ALJ findings, which were already found insufficient by a district court in 2017.  The ALJ also failed to properly assess Dr. Mitchell's 2017 opinion and did not provide specific and legitimate reasons to discount the opinions of Dr. Bargreen and Dr. Mitchell.

### 3.  Dr. Fuentes and Dr. Hale

The 2021 ALJ also gave the same reasons as the 2016 ALJ to discount the opinions of Dr. Fuentes and Dr. Hale, who limited Plaintiff to sedentary work in 2011.  *Compare* Tr. 21 *and* 1512-13.  The ALJ again discounted the opinions of the examining and reviewing doctors because Plaintiff's activities such as yoga, walking and prescribed exercise, and travelling, as well as more recent treatment records, support a light level RFC instead of sedentary level RFC.  *Id.*  In the 2021 decision the text is moved so that the opinions are discussed together, and the ALJ gave the opinions some/partial weight, but the reasoning is essentially the same as in the 2016 decision.  The court already found in 2017, however, that this reasoning was conclusory and failed to achieve the level of specificity required to justify an ALJ's rejection of an opinion; the district court explained the ALJ "failed to provide his interpretation of the evidence . . . did not provide any discussion explaining how recommendations that Plaintiff exercise and lose weight are inconsistent with Dr. Fuentes' opinion" and, for example, "failed to identify how the ability to walk up to 12 blocks is inconsistent with Dr. Fuentes' opinion that

REPORT AND RECOMMENDATION . . . - 17

Plaintiff could stand and walk for three hours in an eight-hour day." Tr. 1712-13. The district court also found the ALJ failed to "adequately explain how the more recent treatment records and Plaintiff's self-reported activities contradict Dr. Hale's opinion," explaining that the ALJ "failed to identify the 'more recent treatment records' or show how those treatment records are inconsistent with Dr. Hale's findings" or to show "how Plaintiff's ability to practice yoga and travel are inconsistent with Dr. Hale's opinion." Tr. 1714. The 2021 ALJ again references "medical evidence received subsequent to these opinions," but does not specify what evidence, if any, supports his findings. Tr. 1513. This is insufficient.

The ALJ was bound by the district court's previous decision and harmfully erred by discounting multiple medical opinions for the same reasons the district court found insufficient and harmful in 2017. Further, despite multiple opportunities, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to discount multiple opinions.

### 4. Other Medical Opinions

Plaintiff contends the ALJ also failed to provide legally sufficient reasons to reject other opinions and failed to discuss a medical opinion. ECF No. 21 at 12-19. As the claim is remanded for the multiple errors discussed *supra* the court declines to further address this issue.

## B. Symptom Claims

Plaintiff contends the ALJ erred by improperly rejecting Plaintiff's subjective complaints. ECF No. 21 at 19-25. It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews,* 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

REPORT AND RECOMMENDATION . . . - 18

1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester,* 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Here, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  Tr. 1507.

### 1. Activities

The ALJ found Plaintiff's activities were inconsistent with her symptom claims.  Tr. 1507-08, 1510-11.  The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ found that Plaintiff's "self-reported activities reflect that she is not as functionally limited as alleged" and Plaintiff has "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  Tr. 1507-08, 1510-11.  The ALJ noted Plaintiff

testified in 2016 that she did "volunteer work for the homeless once a week, and she walks and does yoga as much as she can. These activities contradict the allegation that she is severely limited by fibromyalgia. . . ." Tr. 1507. The ALJ also concluded "it is significant that [Plaintiff] testified she takes long-distance bus travel '4 times a year' to visit family including her grandchildren in eastern Washington." Tr. 1508. The ALJ concluded, therefore, that Plaintiff could "sit for a prolonged period of time when she has a purpose to do so" and that her ability to ride on the bus contradicted her allegations of severe depression and anxiety, as she could ride the bus with passengers unknown to her four times a year." *Id.*

The ALJ also found her plans to attend a high school reunion, her enrollment in online courses, and keeping in touch with church friends were inconsistent with her allegations, and that her activities of daily living including light housework, attending appointments, and performing self-care and household chores were inconsistent with her claims. Tr. 1510-11. However, the ALJ did not provide any analysis of how any of these activities were inconsistent with Plaintiff's allegations, and the ALJ acknowledged Plaintiff's reports that she had to rest in anticipation of activities including appointments, had cut her hair in order to make grooming easier, did not complete the online courses, that activities such as meal preparation and light cleaning increased her pain, and that travelling to eastern Washington a few times a year increased her symptoms. Tr. 1510. Plaintiff points out that the ALJ also left out portions of Plaintiff's testimony, including that her volunteer activity was not going well and that she missed many days. ECF No. 21 at 20-21.

In discounting Plaintiff's symptom claims due to her activities, the ALJ also provided the same reasoning used to discount the examining medical opinions, as discussed *supra*. The district court addressed the issue of travel in the 2017 remand order, explaining that records showed when Plaintiff travelled to see family her symptoms worsened, and she could only visit for a limited amount of

time; and the court found that Plaintiff's ability to travel was not inconsistent with the medical opinions and did not show Plaintiff could adapt to changes and sustain activities. Tr. 1721. As discussed *supra* in relation to the medical opinion evidence, Plaintiff's activities were not a specific and legitimate reason supported by substantial evidence to discount the medical opinions. As the ALJ's reasoning was insufficient to meet the specific and legitimate standard, it cannot meet the higher clear and convincing standard necessary to discount Plaintiff's symptom claims.

The ALJ's conclusion that Plaintiff's activities were inconsistent with her symptom claims was not a clear and convincing reason supported by substantial evidence to discount Plaintiff's allegations.

### 2. Other Reasons

The ALJ provided other reasons to discount Plaintiff's symptoms claims, but also explains most of his other reasoning in terms of Plaintiff's activities. *See, e.g.*, Tr. 1508, 1509-10. As the case is being remanded for immediate benefits on other grounds, the Court declines to further address this issue.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision Plaintiff was not disabled from March 21, 2011 through October 28, 2021 is not supported by substantial evidence and not free of harmful error. Plaintiff argues the decision should be reversed and remanded for the payment of benefits from her alleged onset date through the date the ALJ found her disabled, October 28, 2021. ECF No. 21 at 26. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the record is

adequate for a proper determination to be made and further development is not necessary.

The Ninth Circuit has set forth a three part standard for determining when to credit improperly discounted evidence as true: (1) the record has been fully developed and further administrative proceedings would serve no purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting the evidence in question; and (3) if the improperly discredited evidence were credited as true the ALJ would be required to find Plaintiff eligible for benefits. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

In this case, all three parts of the standard are met. The record has been fully developed over a decade and further proceedings are not necessary. As discussed *supra*, the ALJ failed to provide legally sufficient reasons to reject multiple medical opinions, despite being given several opportunities to do so, and the ALJ also failed to follow the 2017 remand order and persisted in reasoning that was already found insufficient by a district court. Therefore, the second prong of the credit-as-true rule is met. The third prong of the credit-as-true rule is satisfied because if the medical opinions of Dr. Czysz, Dr. Bargreen, and Dr. Mitchell were credited as true, the ALJ would be required to find Plaintiff disabled. Finally, the record as a whole does not leave serious doubt as to whether Plaintiff was disabled during the period at issue. *See Garrison*, 759 F.3d at 1021. Records show Plaintiff experienced a history of trauma and abuse and suffered severe mental health symptoms along with chronic pain.

Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (internal citations omitted). Here, Plaintiff filed for benefits in 2011, alleging serious mental and physical impairments, the case

REPORT AND RECOMMENDATION . . . - 22

was already remanded by the Western District of Washington in 2017, and the ALJ failed to follow the 2017 remand order despite multiple orders to do so by the Appeals Council, causing significant delay in a decision.  As discussed above, the most recent ALJ failed to follow the remand order(s), copied much of the 2016 decision reusing reasoning already rejected by this Court, and in general appears to have taken very little care with the decision.  There have been five hearings and four ALJ decisions; the Appeals Council remanded the 2012 and 2019 ALJ decisions on its own, the District Court for the Western District of Washington remanded the 2016 ALJ decision, and the 2021 ALJ decision is now remanded by this Court for the same errors.  Considering the delay of over a decade from the date of the application and harmful errors by the ALJ over multiple decisions, it is appropriate in this case for this Court to use its discretion and apply the "credit as true" doctrine pursuant to Ninth Circuit precedent.

As such, the Court recommends the case be remanded for an immediate calculation of benefits from her alleged onset date through October 28, 2021.

Accordingly, **IT IS HEREBY RECOMMENDED** Plaintiff's Motion for Summary Judgment, **ECF No. 21**, be **GRANTED**; Defendant's Motion for Summary Judgment, **ECF No. 22**, be **DENIED**; and the District Court Executive enter **Judgment for Plaintiff REVERSING and REMANDING** the matter for an immediate calculation of benefits.

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within fourteen (14) days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within fourteen (14) days after receipt of the objection.  Attention is

directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMJR 2, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed. The District Court Executive is directed to file this Report and Recommendation and provide copies to counsel.

DATED August 29, 2023.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION . . . - 24